E-FILED
Friday, 27 October, 2006  02:43:43 PM
Clerk, U.S. District Court, ILCD

# United States District Court

__CENTRAL__ DISTRICT OF __ILLINOIS__

UNITED STATES OF AMERICA

v.

PHILLIP SCOTT, JR.

CRIMINAL COMPLAINT

CASE NUMBER: 06-6429M

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief.

FILED
OCT 2 7 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## COUNT ONE
### (POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME)

On or about October 26, 2006, in Rock Island County, in the Central District of Illinois, and elsewhere, the defendant,

**PHILLIP SCOTT, JR.**,

did knowingly possess a firearm, that is, a Glock 9 mm semi-automatic pistol, in furtherance of a drug trafficking crime which is a felony prosecutable in a court of the United States, that is, the violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), set forth in Count Two of this Complaint,

all in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT TWO
### (POSSESSION WITH INTENT TO DISTRIBUTE COCAINE)

On or about October 26, 2006, in Rock Island County, in the Central District of Illinois, and elsewhere, the defendant,

**PHILLIP SCOTT, JR.**,

did knowingly and intentionally possess with intent to distribute a mixture and substance containing cocaine, a Schedule II controlled substance,

all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNT THREE
### (ATTEMPT TO DISTRIBUTE COCAINE)

On or about October 26, 2006, in Rock Island County, in the Central District of Illinois, and elsewhere, the defendant,

**PHILLIP SCOTT, JR.**,

did attempt to commit an offense under Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), that is,

to knowingly distribute a mixture and substance containing a detectible amount of cocaine, a Schedule II controlled substance,

all in violation of Title 21, United States Code, Section 846.

## COUNT FOUR
### (FELON IN POSSESSION OF A FIREARM)

On or about October 26, 2006, at Rock Island, in Rock Island County, in the Central District of Illinois, the defendant,

**PHILLIP SCOTT, JR.,**

having been previously convicted under the laws of the State of Iowa the crimes of First Degree Burglary, Second Degree Kidnaping, Third Degree Sex Abuse, and Going Armed with Intent, all crimes punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm which had previously traveled in interstate commerce, that is, a Glock 9 mm semi-automatic pistol,

all in violation of Title 18, United States Code, Sections 922(g) and 924(a)(2).

I further state that I am a Special Agent, Drug Enforcement Administration, and that this Complaint is based on the following facts:

See attached Affidavit in Support of Complaint which is made a part hereof.

Continued on the attached sheet and made a part hereof:      ☒ Yes ☐ No

S/Russell Coulter
_____
Signature of Complainant
Russell Coulter, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

October 27, 2006                    at      Davenport, Iowa
_____         _____
Date                                            City and State


Thomas J. Shields
United States Magistrate Judge                  S/Thomas J. Shields
_____         _____
Name & Title of Judicial Officer                Signature of Judicial Officer

- 2 -

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Russell Coulter, of lawful age, being first duly sworn on oath, state the following:

1. I am employed as a Special Agent with the U.S. Drug Enforcement Administration (DEA), and have been so employed since January 1997. Prior to this, I was employed as a Special Agent with the U.S. Railroad Retirement Board, Office of Inspector General for approximately six years. I have a bachelor's degree in Law Enforcement Administration from Western Illinois University. During my law enforcement career, I have been involved in the undercover and controlled purchase of narcotics, the management of and extensive debriefing of confidential informants, the tracing of drug proceeds, and the acquisition and execution of hundreds of search warrants. As a result, I have arrested numerous individuals for violating both state and federal statutes with regards to the possession, manufacture, and sale of controlled substances, and for money laundering violations. I have also received formal training through the Drug Enforcement Administration and U.S. Treasury Department, and have attended numerous seminars and conferences regarding the distribution of controlled substances and the laundering of drug proceeds.

2. In August 2006 I became involved in an investigation, along with the Quad City Metropolitan Enforcement Group (QCMEG), concerning the distribution of cocaine in the Quad Cities area by Phillip Scott, Jr. My participation in this investigation included the review of reports of other officers, the controlled purchases of narcotics, and the analysis of records.

3. Between August 21, 2006 and October 17, 2006, an undercover agent from the Quad City Metropolitan Enforcement Group (QCMEG) received cocaine from Phillip Scott, Jr. on seven (7) occasions.

4. On August 21, 2006, the QCMEG undercover agent purchased approximately 8.9 grams of purported cocaine for $200 pre-recorded official funds. The substance field tested positive for the presence of cocaine.

5. On August 31, 2006, the QCMEG undercover agent purchased approximately 29.3 grams of purported cocaine for $800 pre-recorded official funds from Scott. The substance field tested positive for the presence of cocaine.

6. On September 7, 2006, the QCMEG undercover agent placed a telephone call to Scott, and arranged to buy one (1) ounce of cocaine from Scott. Later that day, the agent met with Scott. During the transaction with Scott, the undercover agent provided Scott with $800 of pre-recorded official funds. Scott provided the undercover agent with an amount of purported cocaine, which later field tested positive for the presence of cocaine and weighed approximately 15.4 grams.

7. During the September 7, 2006, recorded meeting between Scott and the undercover agent, negotiations were conducted regarding future transactions of larger quantities of cocaine. The conversation also included negotiations regarding Scott's interest in purchasing semi-

automatic and fully-automatic firearms from the undercover agent. Regarding the purchase of cocaine, Scott advised the undercover agent that a ¼ kilogram of cocaine would cost $5,600, a ½ kilogram of cocaine would cost $11,200, and a kilogram of cocaine would cost $22,400. Scott also advised the undercover agent that he obtains approximately 15 ounces of cocaine per week from his cocaine source. Scott furthermore advised that he was currently in possession of a "solid slab" of cocaine. Scott advised that his cocaine source wanted a machine gun, while Scott wanted to purchase a Glock semi-automatic pistol. Scott told the undercover agent that he (Scott) was a felon, but that he nonetheless wanted to obtain a firearm.

8. After the September 7, 2006, meeting with Scott, the undercover agent realized that Scott had not provided him with the correct amount of cocaine; the approximately 15.4 grams provided by Scott was less than the one ounce, or 28.35 grams, that Scott and the agent had agreed upon. The undercover agent then placed a recorded telephone call to Scott and advised Scott that the "package was short". Scott apologized to the undercover agent and stated that he must have "mixed up the packages". Scott and the undercover agent met later that day, and Scott provided the undercover agent with an additional 8.1 grams of purported cocaine. The substance subsequently field-tested positive for the presence of cocaine.

9. On September 14, 2006, the QCMEG undercover agent placed a telephone call to Scott, and arranged a transaction for one (1) ounce of cocaine. During the recorded conversation, the undercover agent advised Scott that he wanted the same amount of cocaine as he had obtained the last time. Scott could not recall the amount of the last transaction and asked the undercover agent if it was "four" (meaning four ounces of cocaine). The undercover agent advised Scott that he/she just needed the one (1) ounce for $800. Scott and the undercover agent met later that day. During this meeting, the undercover agent entered Scott's vehicle where Scott provided the undercover agent with approximately 29.5 grams of purported cocaine, in exchange for $800 pre-recorded official funds. The substance subsequently field-tested positive for the presence of cocaine.

10. During the September 14, 2006, meeting between Scott and the undercover agent, negotiations occurred regarding the undercover agent's purchase of a ½ kilogram of cocaine. Scott stated that he did not believe that he would be able to get a ½ kilogram of cocaine "fronted" to him from his cocaine supplier, but advised the undercover agent that he, Scott, could "do a quarter himself" (meaning Scott would be able to provide the undercover agent with a ¼ kilogram of cocaine).

11. On September 27, 2006, the QCMEG undercover agent placed a recorded telephone call to Scott and negotiated an additional one (1) ounce purchase of cocaine for $800. Later that day, the undercover agent met Scott, and Scott provided the undercover agent with approximately 29.3 grams of purported cocaine, in exchange for $800 pre-recorded official funds. The substance subsequently field-tested positive for the presence of cocaine. During this September 27, 2006, meeting between Scott and the undercover agent, negotiations also continued regarding the undercover agent's desire to purchase a ¼ kilogram quantity of cocaine from Scott, and Scott's desire to purchase firearms from the undercover agent.

12. On October 17, 2006, the QCMEG undercover agent placed a recorded telephone call to Scott and negotiated an additional one (1) ounce purchase of cocaine for $800. On this date, the undercover agent met Scott. Scott provided the undercover agent with approximately 29.3 grams of purported cocaine, in exchange for $800 pre-recorded official funds. The substance subsequently field-tested positive for the presence of cocaine.

13. On October 20, 2006, the QCMEG undercover agent placed a recorded telephone call to Scott. The purpose of this telephone call was to arrange a meeting where an exchange would be made between Scott and the undercover agent for a Glock semi-automatic pistol Scott had previously requested. Scott advised the undercover agent that he was still interested in obtaining the Glock.

14. On October 25, 2006, the QCMEG undercover agent placed a recorded telephone call to Scott, during which Scott agreed to provide the agent with two (2) ounces of cocaine in exchange for a quantity of United States currency and a Glock semi-automatic pistol. The two arranged for the transaction to take place the following day, October 26, 2006.

15. On October 26, 2006, the QCMEG undercover agent met with Scott in a parking lot in Moline, Illinois. The QCMEG undercover agent entered Scott's vehicle and provided Scott with the Glock semi-automatic pistol. After Scott received the Glock, he was arrested. During a search of Scott's vehicle incident to his arrest, agents discovered and seized approximately 58.3 grams of a substance from the center console area of the vehicle. The substance subsequently field tested positive for the presence of cocaine.

16. A State of Iowa Criminal History query revealed that in January of 1993, Scott was convicted of the felony offenses of First Degree Burglary, Second Degree Kidnaping, Third Degree Sex Abuse, and Going Armed with Intent, for which Scott was incarcerated and subsequently released in December of 2004. The query also listed Scott as a sex offender.

17. Based on the foregoing, I have reason to believe that Phillip Scott, Jr. possessed a firearm in furtherance of a drug trafficking crime (Count 1), possessed with intent to distribute cocaine, (Count 2), attempted to distribute cocaine (Count 3), and was a felon in possession of a firearm, (Count 4).

S/Russell Coulter
Special Agent Russell Coulter
Drug Enforcement Administration

S/Thomas J. Shields
Thomas J. Shields
United States Magistrate Judge